## No. 11,080.

## MONTROSE LAND AND INVESTMENT CO. *v.* GREELEY NATIONAL BANK.

Decided October 26, 1925. Rehearing denied November 23, 1925.

Action on promissory note.    Judgment for plaintiff.

### *Reversed.*

1.  PLEADING—*Bills and Notes—Defense.*  In an action on a promissory note, a plea of want of consideration amounts to a traverse of the complaint.

2.      *Bills and Notes—Replication.*  In an action on a promissory note, a reply alleging ratification was a mere reallegation of execution and added nothing.

3.  APPEAL AND ERROR—*Findings.*  So called findings in an opinion of the trial court are not to be regarded as controlling.

4.      *Findings.*  Where there is a judgment without findings, the case will be regarded by the reviewing court as if all findings were for the successful party.

5.  CORPORATIONS—*Officers—Powers.*  To borrow money or execute promissory notes are not powers incident to the office of president of an ordinary corporation.

6.      *Officers—Powers.*  The fact that the conduct of a corporation makes an officer its general manager does not ipso facto delegate to him the power to borrow money or execute notes.

7.  PRINCIPAL AND AGENT—*General Agent—Powers.*  A general agent to carry on business, has not, ipso facto, power to borrow money or issue paper, unless such action is a necessary incident to the business of the principal.  Loan and investment business carries with it no such incident.

8.  CORPORATIONS—*Directors.*  A corporation doing a loan and investment business acts by its board of directors in borrowing money and executing notes.

9.  PRINCIPAL AND AGENT—*Delegated Powers.*  The conduct of a principal tacitly conceding powers to an agent, works in two ways,

as evidence tending to show actual authority, and by way of estoppel.

10. BANKS AND BANKING—*Knowledge of Cashier.* A cashier's knowledge of lack of authority of the president of a land company to execute a note transferred to the bank, precludes it from asserting that it was misled as to the president's authority.

11. PRINCIPAL AND AGENT—*Ratification.* Ratification requires knowledge by the principal of all of the circumstances of the transaction claimed to be ratified.

12. CORPORATIONS—*Knowledge—Ratification.* In an action on a promissory note of a corporation, evidence held not to show ratification of the act of the president in executing the note without authority of the board of directors.

13.  *Unauthorized   Acts   of   President—Ratification—Estoppel.* Where silence and failure to repudiate an unauthorized note of a corporation does not harm a party claiming ratification thereby, there is no estoppel.

14.  *Unauthorized   Note—Ratification—Effect.* Ratification of an unauthorized note of a corporation is not equivalent to a ratification of a renewal note for the same indebtedness, but only of the consideration thereof.

*Error to the District Court of Weld County, Hon. George H. Bradfield, Judge.*

Messrs. HODGES, WILSON & ROGERS, Mr. HENRY C. VIDAL, for plaintiff in error.

Mr. WILLIAM R. KELLY, Mr. CLAY R. APPLE, for defendant in error.

*Department Two.*

MR. JUSTICE DENISON delivered the opinion of the court.

UPON trial to the court, the bank, defendant in error, had judgment against the Montrose Land & Investment Company, plaintiff in error, upon a promissory note. The company brings error.

The plaintiff in error will be referred to as the Montrose

Company, the defendant in error as the Bank, and the Greeley Loan Company, which figures herein, as the Loan Company. The Holly Sugar Corporation will be referred to as the Sugar Company.

The defendant denied the execution of the note, pleaded want of consideration (which was a traverse, *Alden v. Carpenter*, 7 Colo. 87, 91, 1 Pac. 904), and that plaintiff had notice of these defenses. All other defenses can be reduced to these two. In reply plaintiff denied notice; it also alleged ratification, which was no more than re-alleging execution (*Lynch v. Smyth*, 25 Colo. 103, 109, 54 Pac. 634), and so added nothing.

These issues, therefore, were three: (1) Execution vel non; (2) consideration vel non; (3) notice vel non.

The court made no formal findings but only an opinion. We cannot regard the so-called findings in the opinion as controlling. *Jones v. Boyer*, 68 Colo. 568, 103 Pac. 492; *Soule v. Kunkle*, 71 Colo. 221, 223, 205 Pac. 529; *McMillan v. Harbert*, 74 Colo. 161, 162, 219 Pac. 1070. There was then a judgment without findings and we must regard the case as if all findings were for the plaintiff.

The note in question was signed by the Montrose Company by Hoffman, its president, and attested by Riley, its secretary, dated June 1, 1921, and payable on demand. Its only consideration was a previous note from the Montrose Company to the Greeley Loan Company, a corporation under the control and management of Hoffman, signed in the same way, dated March 1, 1921, and due June 1st, and discounted by the bank through Neill, its cashier, April 11, 1921; this note was cancelled and surrendered when the note in suit was delivered.

The Montrose Company was promoted by Hoffman. Carlton, president of the Sugar Company, and Neill arranged with him that the proposed company should be financed by the Holly Sugar Company by the advancement of what money it needed; that it should purchase and improve land in Mesa county and sell it to farmers to promote the cultivation there of beets, which the Sugar

Company needed.  The stock, except two or three shares, was equally divided between the Sugar Company, Neill, Hoffman and Moynihan.  The corporation was organized accordingly in December, 1919.  At the times in question Hoffman, Moynihan, Neill, Riley and one Armstrong, who lived in Illinois, were the directors.  The Sugar Company paid for its own stock in cash and for Neill's and Hoffman's and Moynihan's.  They gave their notes for the price of theirs and secured them by the stock which was issued to them.  The Sugar Company continued to make advances for some time and it is not shown that it ever refused to do so.  Hoffman was president and made the note to the Loan Company, which we have mentioned. April 11th the Bank discounted it.  The ostensible consideration was advances by the Loan Company.  There is much dispute and argument as to whether there were such advances and whether the Montrose Company, other than Hoffman and Riley, knew of them, but, in view of our decision upon the other issue, this becomes immaterial.  June 11, 1920, Hoffman gave the note in suit.

Upon the first issue: Was the note executed?  The answer depends (1) on whether Hoffman had authority to execute it, and (2) whether its execution was ratified by the company.

Had Hoffman authority?  that is, is there evidence to justify the court in so finding?  Under the by-laws it was his duty to sign "all * * * contracts and other instruments in writing authorized by the board of directors to be executed."  There was no such authorization.  His authority, then, must be sought outside the by-laws.  To borrow money or execute a promissory note are not powers incident to the office of the president of an ordinary corporation.  The bank, however, claims that the Montrose company, by permitting Hoffman to manage and completely control its affairs, has held him out as its agent with power to give negotiable paper.  The conduct of the Montrose company without doubt made Hoffman its general manager, but not, ipso facto, with power

to borrow money or make notes. *McClellan v. Morris,* 71 Colo. 304, 310, 206 Pac. 575; *Schramm v. Liebenberg,* 42 Colo. 516, 94 Pac. 345. A general agent to carry on business, has not, ipso facto, power to borrow money or issue paper. *Sanford Cattle Co. v. Williams,* 18 Colo. App. 378, 381, 71 Pac. 889; *Schramm v. Liebenberg, supra; Ruedy v. Alamosa Nat. Bank,* 77 Colo. 112, 235 Pac. 350; *Rizzuto v. R. W. English Lumber Co.,* 44 Colo. 413, 98 Pac. 728, unless such action is a necessary incident to the business of the principal. The land and investment business carries no such incident. Every lawyer knows that corporations in such business act by their board of directors in such matters; the by-laws of this company had so provided, the financing of the company had all been provided for through the Holly Sugar Company and Hoffman had never, so far as the record shows, executed any promissory notes without the board's authority except these two. The conduct of a principal tacitly conceding powers to an agent works in two ways, as evidence tending to show actual authority and by way of estoppel, i. e., by misleading some one to believe that there is actual authority. In the present case the evidence shows that there was no actual authority and the bank was not misled because the cashier Neill was a director and one of the original organizers of the Montrose company, knew of the arrangement that had been made for supplying that company with funds, and that it stood in no need of money, and had no reason to believe that Hoffman had authority. The bank knew only through Neill, so it was not misled.

Was there ratification? The answer must be, "No". The bank claims ratification by silence and failure to repudiate after knowledge. Ratification requires knowledge by the principal of all the circumstances of the transaction. The Montrose company, except Hoffman and Riley, who made the notes, and Neill, who was acting for the bank, knew nothing of the first note until after it had been taken up by the second, and nothing of the second

until after Hoffman's death which was in December, 1921, and on the 29th of that month Carlton repudiated the notes by letter to the bank. The evidence is that all that the company knew, up to the 28th of October, 1921, was that there had been a note to the Loan Company, that it had been renewed, which was untrue, and that the Loan Company claimed it was given to cover advances. At that time it knew nothing of the transactions with the bank, and there is no evidence that it knew of them till in December. Here was no ratification by silence. We must then say that the execution of the note is not supported by the evidence. It follows that the issues as to consideration and notice are immaterial.

It is argued that if the note had been repudiated in August, 1921, the bank might have recouped its loss out of the Loan Company, which was then solvent; but counsel seems to overlook the fact that the Loan Company was not liable on the note in suit, and the note which it endorsed had been paid and cancelled in June. It follows that the mere silence and failure to repudiate the note in suit did not harm the bank as it contends, and so does not amount to a ratification by estoppel. *Union G. M. Co. v. Rocky Mtn. Nat. Bank,* 2 Colo. 248, 263. As to the first note, its ratification is material only to the question of consideration. Even if it was ratified that ratifies not the second note but only the consideration thereof, and the note itself still stands without authority.

The judgment is reversed with directions to enter judgment for the defendant.

MR. CHIEF JUSTICE ALLEN and MR. JUSTICE WHITFORD, concur.